# REQUIRED STATEMENT
## TO ACCOMPANY MOTIONS FOR RELIEF FROM STAY

All Cases: Debtor(s) __Taryn Tarese Shelby & Kinsyn Antione Shelby__ Case No. __17-10829__ Chapter __13__

All Cases: Moving Creditor __Breckenridge HOA of Shorewood__ Date Case Filed __4/05/2017__

Nature of Relief Sought: ☑ Lift Stay    ☐ Annul Stay    ☐ Other (describe) _____

Chapter 13: Date of Confirmation Hearing _____ or Date Plan Confirmed __9/22/2017__

Chapter 7: ☐ No-Asset Report Filed on _____
☐ No-Asset Report not Filed, Date of Creditors Meeting _____

1. Collateral
   a. ☑ Home
   b. ☐ Car   Year, Make, and Model _____
   c. ☐ Other (describe) _____

2. Balance Owed as of Petition Date $ __Unknown__
   Total of all other Liens against Collateral $ __Unknown__

3. In chapter 13 cases, if a post-petition default is asserted in the motion, attach a payment history listing the amounts and dates of all payments received from the debtor(s) post-petition.

4. Estimated Value of Collateral (must be supplied in *all* cases) $ __190,000.00__

5. Default
   a. ☐ Pre-Petition Default
      Number of months _____   Amount $ _____

   b. ☑ Post-Petition Default
      i. ☑ On direct payments to the moving creditor
         Number of months _____   Amount $ __880.25__   + accruing assessments, charges, attorney's fees, and costs.
      ii. ☐ On payments to the Standing Chapter 13 Trustee
         Number of months _____   Amount $ _____

6. Other Allegations
   a. ☑ Lack of Adequate Protection § 362(d)(1)
      i. ☐ No insurance
      ii. ☐ Taxes unpaid   Amount $ _____
      iii. ☐ Rapidly depreciating asset
      iv. ☑ Other (describe) __Accruing lien for unpaid association assessments__

   b. ☑ No Equity and not Necessary for an Effective Reorganization § 362(d)(2)

   c. ☑ Other "Cause" § 362(d)(1)
      i. ☐ Bad Faith (describe) _____
      ii. ☐ Multiple Filings
      iii. ☑ Other (describe) __Default under Movant's Declarations__

   d. Debtor's Statement of Intention regarding the Collateral
      i. ☐ Reaffirm   ii ☐ Redeem   iii. ☐ Surrender   iv. ☑ No Statement of Intention Filed

Date: __April 18, 2019__   _____
                            Counsel for Movant

(Rev. 12/21/09)

### Account History Breakdown

911 Phelps Ln
POST PETITION
Breckenridge HOA

| Date | Description | Charge | Payment Amt | Balance |
|---|---|---|---|---|
| 01/01/18 | Annual Assessment for 2018 | $350.25 | | $350.25 |
| 03/02/18 | Late Payment for March 2018 | $25.00 | | $375.25 |
| 03/21/18 | Deed Restriction Violation for Inspection dated 3/21/2018 | $25.00 | | $400.25 |
| 05/01/18 | Deed Restriction Violation for Inspection dated 3/21/2018 | $100.00 | | $500.25 |
| 01/01/19 | Annual Assessment for 2019 | $355.00 | | $855.25 |
| 03/31/19 | Late Payment for March 2019 | $25.00 | | $880.25 |
| | **Total Charges** | $880.25 | **Total Payments** $0.00 | **Total Balance** $880.25 |

+ 4-18-19 - BK Legal fee - Lift Stay  881.00
                                     $1,761.25

*THIS INSTRUMENT PREPARED*
*BY AND SHOULD BE RETURNED*
*TO:*

*Brian Meltzer*
*MELTZER, PURTILL & STELLE LLC*
*1515 East Woodfield Road*
*Second Floor*
*Schaumburg, Illinois 60173-5431*



MARY ANN STUKEL   37P   R 2004170468
Will County Recorder   Page 1 of 37

LMR Date 09/15/2004   Time 11:49:47
Recording Fees:   51.00

30034\089\0002                                                               08/30/04

# AMENDED AND RESTATED
# DECLARATION FOR BRECKENRIDGE OF SHOREWOOD

## TABLE OF CONTENTS

ARTICLE ONE   Definitions ............................................................................................................. 1

   1.01 ASSOCIATION ................................................................................................................. 1
   1.02 BOARD ............................................................................................................................ 1
   1.03 BY-LAWS ........................................................................................................................ 1
   1.04 CHARGES ....................................................................................................................... 1
   1.05 COMMUNITY AREA ..................................................................................................... 1
   1.06 COMMUNITY ASSESSMENT ...................................................................................... 2
   1.07 COMMUNITY EXPENSES ............................................................................................ 2
   1.08 COUNTY ......................................................................................................................... 2
   1.09 DECLARANT .................................................................................................................. 2
   1.10 DECLARATION OR AMENDED AND RESTATED DECLARATION ...................... 2
   1.11 DEVELOPMENT AREA ................................................................................................. 2
   1.12 EASEMENT AREA ........................................................................................................ 2
   1.13 FIRST MORTGAGEE ..................................................................................................... 2
   1.14 HOME .............................................................................................................................. 2
   1.15 LOT .................................................................................................................................. 2
   1.16 MUNICIPALITY ............................................................................................................. 3
   1.17 NON-OWNER ................................................................................................................. 3
   1.18 OWNER ........................................................................................................................... 3
   1.19 PERSON ........................................................................................................................... 3
   1.20 PREMISES ....................................................................................................................... 3
   1.21 RECORD .......................................................................................................................... 3
   1.22 RESIDENT ...................................................................................................................... 3
   1.23 TURNOVER DATE ........................................................................................................ 3
   1.24 VOTING MEMBER ........................................................................................................ 3

ARTICLE TWO   Scope of Declaration ............................................................................................. 3

   2.01 PROPERTY SUBJECT TO DECLARATION ................................................................ 3
   2.02 CONVEYANCES SUBJECT TO DECLARATION ...................................................... 3
   2.03 DURATION ..................................................................................................................... 3

1st AMERICAN TITLE order # 863027       1 37 q       1/17

# ARTICLE SIX
## Assessments

6.01 **PURPOSE OF ASSESSMENTS**: The use of assessments levied by the Association shall be limited to the purposes of (i) maintaining the Community Area, (ii) administering the affairs of the Association, (iii) paying the Community Expenses, and (iv) accumulating reserves for any such expenses. For purposes hereof, a Lot owned by Declarant shall only be subject to assessment hereunder from and after such time as an occupancy certificate has been issued with respect to a Home constructed thereon.

6.02 **COMMUNITY ASSESSMENT**: Each year on or before December 1, the Board shall adopt and furnish each Owner with a budget for the ensuing calendar year, which shall show the following with reasonable explanations and itemizations:

(a) The estimated Community Expenses;

(b) The estimated amount, if any, to maintain adequate reserves for Community Expenses including, without limitation, amounts to maintain the Capital Reserve;

(c) The estimated net available cash receipts from the operation and use of the Community Area, plus the estimated excess funds, if any, from the current year's assessments;

(d) The amount of the "Community Assessment" payable by the Owners, which is hereby defined as the amount determined in (a) above, plus the amount determined in (b) above, minus the amount determined in (c) above;

(e) That portion of the Community Assessment which shall be payable with respect to the ensuing calendar year by the Owner of each Lot which is subject to assessment hereunder, which shall be equal to the Community Assessment divided by the number of Lots subject to assessment hereunder, so that each Owner shall pay equal Community Assessments for each Lot owned. The Community Assessment shall be paid in periodic installments as determined by the Board from time to time, but no less frequently than once each calendar year.

Anything herein to the contrary notwithstanding the provisions of this paragraph shall apply with respect to the period between the date of the Recording of this Amended and Restated Declaration to the Turnover Date. Any annual budget prepared by the Board after the Recording of this Amended and Restated Declaration and prior to the Turnover Date shall be based on the assumptions that (i) the Development has been fully constructed as shown on Declarant's then current plan for the Development ("Current Development Plan") and (ii) all proposed Homes have been sold and are occupied. The Current Development Plan shall be kept on file with the Association and may be modified from time to time by Declarant. Prior to the Turnover Date, each Owner (other than the Declarant) shall pay as the Owner's share of the annual Community Assessment an amount equal to the budgeted Community Expenses for such year divided by the number of proposed Homes on the then Current Development Plan so that each Owner (other than Declarant) will pay, with respect to each Lot owned, an annual Community Assessment

equal to what such Owner would be paying with respect to the Owner's Lot if the Development were fully constructed pursuant to the Current Development Plan and all proposed Homes have been built and are occupied. Each Owner shall pay such assessment at such times as determined by the Board, but not less frequently than once each year. The Declarant shall not be obligated to pay any Community Assessments to the Association after the Recording of this Amended and Restated Declaration and prior to the Turnover Date. However, if with respect to the period commencing on the date of the Recording of this Amended and Restated Declaration and ending on the Turnover Date, the amount of Community Assessments and working capital contributions under Section 6.07 payable by Owners (other than Declarant) less the portions thereof which are to be added to Reserves is less than the Community Expenses actually incurred with respect to such period, then the Declarant shall pay the difference to the Association pursuant to terms agreed upon between the Declarant. From time to time prior to the Turnover Date, the Declarant shall deposit with the Association amounts which reasonably approximate Declarant's obligation hereunder as estimated by the Declarant. A final accounting and settlement of the amount, if any, owed by Declarant to the Association or by the Association to the Declarant, as the case may be, shall be made as soon as practicable after the Turnover Date.

6.03 PAYMENT OF COMMUNITY ASSESSMENT: Each Owner of a Lot which is subject to assessment shall pay to the Association, or as the Board may direct, that portion of the Community Assessment which is payable by each Owner of a Lot under Section 6.02(e) or Section 6.08, as applicable, at such times as the Board shall determine from time to time. For purposes hereof, a Lot shall only be subject to assessment hereunder from and after such time as an occupancy certificate has been issued by the Municipality with respect to the Home constructed thereon.

6.04 REVISED ASSESSMENT: If the Community Assessment proves inadequate for any reason (including nonpayment of any Owner's assessment) or proves to exceed funds reasonably needed, then the Board may increase or decrease the assessment payable under Section 6.02(e) by giving written notice thereof (together with a revised budget and explanation for the adjustment) to each Owner not less than ten (10) days prior to the effective date of the revised assessment.

6.05 SPECIAL ASSESSMENT: After the Turnover Date the Board may levy a special assessment as provided in this Section (i) to pay (or build up reserves to pay) expenses other than Community Expenses incurred (or to be incurred) by the Association from time to time for a specific purpose including, without limitation, to make alterations, additions or improvements to the Community Area, or any other property owned or maintained by the Association; or (ii) to cover an unanticipated deficit under the prior year's budget. Any special assessment shall be levied against all of Lots in equal shares. No special assessment shall be adopted without the affirmative vote of Voting Members representing at least two-thirds (2/3) of the votes cast on the question. The Board shall serve notice of a special assessment on all Owners by a statement in writing giving the specific purpose and reasons therefor in reasonable detail, and the special assessment shall be payable in such manner and on such terms as shall be fixed by the Board. Any assessments collected pursuant to this Section (other than those to cover an unanticipated deficit under the prior year's budget) shall be segregated in a special account and used only for the specific purpose set forth in the notice of assessment.

6.06 CAPITAL RESERVE: The Association shall segregate and maintain special reserve accounts to be used solely for making capital expenditures in connection with the Community Area (the "Capital Reserve"). The Board shall determine the appropriate level of the Capital Reserve based on a periodic review of the useful life of improvements to the Community Area and other property owned by the Association and periodic projections of the cost of anticipated major repairs or replacements to the Community Area and the purchase of other property to be used by the Association in connection with its duties hereunder. The Capital Reserve may be built up by separate or special assessments or out of the Community Assessment as provided in the budget. Special accounts set up for portions of the Capital Reserve to be used to make capital expenditures with respect to the Community Areas shall be held by the Association as agent and trustee for the Owners of Homes with respect to which the Capital Reserve is held and such accounts shall be deemed to have been funded by capital contributions to the Association by the Owners. The budgets which will be adopted from time to time by the Boards appointed by the Declarant prior to the Turnover Date shall include reserve buildups which the Board deems to be appropriate based on information available to the Board. Boards elected by the Owners after the Turnover Date may use different approaches from those used by Boards appointed by the Declarant for the buildup of reserves or may choose not to provide for the buildup of reserves for certain capital expenditures or deferred maintenance for repairs or replacements of the Community Areas. If the Board chooses not to provide for the buildup of reserves for a particular anticipated expenditure or if the buildup of reserves that the Board does provide for in its budgets does not result in sufficient funds to pay for the expenditure when the expenditure must be made, then (i) neither the Board nor any of its past or present members shall be liable to the Association or the Owners for failing to provide for sufficient reserves and (ii) the Board shall have the right and power to either levy a separate or special assessment to raise the funds to pay the expenditure or to borrow funds to pay the expenditure and repay the borrowed funds out of future Community Assessments, separate assessments or special assessments.

6.07 INITIAL CAPITAL CONTRIBUTION: This Section shall apply to closings occurring after the Recording of this Amended and Restated Declaration. Upon the closing of the first sale of a Lot by the Declarant to a purchaser for value, the purchasing Owner shall make a capital contribution to the Association in an amount equal to one-half (1/2) the annual Community Assessment at the rate which shall become effective with respect to the Lot as of the closing. Said amount shall be held and used by the Association for its working capital needs. In addition, the purchasing Owner shall pay to the Association one hundred dollars ($100.00), which amount shall be added to the Capital Reserve.

6.08 PAYMENT OF ASSESSMENTS: Assessments levied by the Association shall be collected from each Owner by the Association and shall be a lien on the Owner's Lot and also shall be a personal obligation of the Owner in favor of the Association, all as more fully set forth in Article Seven.

ARTICLE SEVEN
Collection of Charges and Remedies for Breach or Violation

7.01 CREATION OF LIEN AND PERSONAL OBLIGATION: The Declarant hereby covenants, and each Owner of a Lot by acceptance of a deed therefor (whether or not it shall be so expressed in any such deed or other conveyance) shall be and is deemed to covenant and

hereby agrees to pay to the Association all Charges made with respect to the Owner on the Owner's Lot. Each Charge, together with interest thereon and reasonable costs of collection, if any, as hereinafter provided, shall be a continuing lien upon the Lot against which such Charge is made and also shall be the personal obligation of the Owner of the Lot at the time when the Charge becomes due. The lien or personal obligation created under this Section shall be in favor of and shall be enforceable by the Association.

7.02 COLLECTION OF CHARGES: The Association shall collect from each Owner all Charges payable by such Owner under this Declaration.

7.03 NON-PAYMENT OF CHARGES: Any Charge which is not paid to the Association when due shall be deemed delinquent. Any Charge which is delinquent for thirty (30) days or more shall bear interest at the rate of eighteen percent (18%) per annum or the maximum rate permitted by law, whichever is less, from the due date to the date when paid. The Association may (i) bring an action against the Owner personally obligated to pay the Charge to recover the Charge (together with interest, costs and reasonable attorney's fees for any such action, which shall be added to the amount of the Charge and included in any judgment rendered in such action), and (ii) enforce and foreclose any lien which it has or which may exist for its benefit. In addition, the Board may add a reasonable late fee to any installment of an assessment which is not paid within thirty (30) days of its due date. No Owner may waive or otherwise escape personal liability for the Charges hereunder by abandonment or transfer of his Lot.

7.04 LIEN FOR CHARGES SUBORDINATED TO MORTGAGES: The lien for Charges, provided for in Section 7.01, shall be subordinate to the Mortgagee's mortgage on the Lot which was Recorded prior to the date that any such Charge became due. Except as hereinafter provided, the lien for Charges, provided for in Section 7.01, shall not be affected by any sale or transfer of a Lot. Where title to a Lot is transferred pursuant to a decree of foreclosure of the Mortgagee's mortgage or by deed or assignment in lieu of foreclosure of the Mortgagee's mortgage, such transfer of title shall extinguish the lien for unpaid Charges which became due prior to the date of the transfer of title. However, the transferee of the Lot shall be personally liable for his share of the Charges with respect to which a lien against his Lot has been extinguished pursuant to the preceding sentence where such Charges are reallocated among all the Owners pursuant to a subsequently adopted annual or revised Community Assessment or special assessment, and non-payment thereof shall result in a lien against the transferee's Lot, as provided in this Article.

7.05 ENFORCEMENT BY OWNERS: Enforcement of the provisions contained in this Declaration and the rules and regulations adopted hereunder may be by any proceeding at law or in equity by any aggrieved Owner against any person or persons violating or attempting to violate any such provisions, either to restrain such violation or to recover damages, and against a Lot to enforce any lien created hereunder.

ARTICLE EIGHT
Use Restrictions

8.01 RESIDENTIAL USE: Each Lot shall be used only for residential purposes, as a private residence, and no professional, business or commercial use shall be made of a Lot or any